IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILADELPHIA NEWSPAPERS, LLC    :        CIVIL ACTION
                                :        NO. 09-1982
          Plaintiff,            :
                                :
     v.                         :
                                :
OFFICIAL COMMITTEE OF           :
UNSECURED CREDITORS ET AL.,     :
                                :
          Defendants.           :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JUNE 10, 2009

     There are two issues pending before the Court: (1) Does
the Court have jurisdiction to consider an appeal from the order
of the Bankruptcy Court denying, without prejudice, the Debtors'
application for the appointment of special counsel under § 11
U.S.C. § 327(e); and (2) If there is jurisdiction, does the
Bankruptcy Court's denial of the application constitute an abuse
of discretion.  For the reasons that follow, the Court holds it
does have jurisdiction to consider the appeal, and the Bankruptcy
Court's denial of the appointment of special counsel is affirmed
in part and reversed in part as an abuse of discretion.

     The decision of the Bankruptcy Court is affirmed to the
extent that it denies the appointment of special counsel to
investigate the recording incident and litigate non-bankruptcy
claims; it is reversed to the extent that it denies the

1

appointment of special counsel to advise the Debtors concerning the legal implications of the recording incident and its impact upon bankruptcy and non-bankruptcy issues.  The case is remanded to the Bankruptcy Court for further consideration in accordance with this memorandum and order.

I.   BACKGROUND

On May 11, 2009, Philadelphia Newspapers, LLC and its related entities (the "Debtors") filed an Emergency Motion for Expedited Appeal (doc. no. 5), pursuant to Federal Bankruptcy Rule 8019, appealing the ruling issued by the Bankruptcy Court on April 20, 2009, denying the Debtors' application for retention of special counsel.  Following a hearing on the motion, the Court granted the motion for expedited appeal and issued an expedited briefing schedule (doc. no. 12).[1]

The Official Unsecured Creditors' Committee (the

---

[1]      The briefing schedule ordered the Debtors to file a brief in support of the appeal by May 15, 2009.  The Committee and Steering Committee were to file a brief in opposition to the appeal by May 26, 2009.  The Debtors filed a sur-reply to the response briefs on June 4, 2009 (doc. no. 32).  The filing of a the sur-reply was not contemplated under the Court's order of May 13, 2009 (doc. no. 12).  Nor did the Debtors seek leave of Court to file the sur-reply.  Under these circumstances, the sur-reply will be disregarded.  To the extent that the Debtors wish to bring matters concerning certain aspects of the Committee's conduct during the investigation to the attention of the Court, they must proceed before the Bankruptcy Court in the first instance.

"Committee") filed a motion to dismiss the Debtors' appeal for lack of jurisdiction, arguing that the Bankruptcy Court's order did not constitute a final, appealable order (doc. no. 14).  The Steering Group of Pre-petition Lenders, together with the Citizens Bank of Pennsylvania, filed a motion to dismiss the Debtors' appeal, also arguing that the Bankruptcy Court's order was not final, and asserting the applicability of the doctrines of equitable mootness and judicial estoppel (doc. no. 15).  These motions are pending before the Court.

A.   The "Recording Incident" and its Aftermath

The Debtors initiated the underlying Chapter 11 bankruptcy proceeding on February 22, 2009.  Prior to filing the Chapter 11 proceeding, the Debtors engaged in pre-petition negotiations with the Secured Lenders.  During these negotiations, the Secured Lenders were represented by their appointed agent, Citizens Bank of Pennsylvania, (the "Agent Bank"), and a small group of lenders who acted as an unofficial Steering Group for other participants in the senior secured credit facility (the "Steering Group").

During pre-petition negotiations, the Debtors, the Steering Group, and the Agent Bank met in person in Philadelphia on November 17, 2008 to discuss restructuring alternatives. During the meeting, the Debtors' CEO, Brian Tierney, became aware that Steering Group member and CIT Group, Inc. ("CIT")

representative, Vincent DeVito, was tape recording the meeting. Tierney demanded that the recording device be turned off, asserting that such recording without consent of the party being recorded is a violation of Pennsylvania law.  DeVito complied with the demand.  (Hereinafter, this sequence of events is referred to as "the recording incident").

Following the recording incident, the Debtors expressed concerns to the Steering Group of potential legal implications arising from the incident.  According to the Debtors, counsel for the Steering Group, Fred Hodara, warned the Debtors that "tattling" to CIT regarding DeVito's conduct is a "mistake" that "would exacerbate the situation." (Doc. no. 18, exh. 3, P-127). Thereafter, in-house counsel for CIT confirmed, in writing to the Debtors, that the recording was destroyed and no other recordings had occurred.[2]  According to the Debtors, following the reporting of the recording incident, the relationship between the Steering Group and the Debtors deteriorated, ending in the filing of the instant bankruptcy petition.[3]

---

[2]    The Debtors note that this representation by CIT is in contradiction with the testimony of Agent Bank representative, Bruce Shearer, who stated that DeVito "usually taped" meetings. (Doc. no. 18, exh. 3, P-127).

[3]    The Debtors provide the following examples of deterioration of the relationship: "Whereas the Steering Group had been willing to consider the Debtors' proposal to invest new equity into the business, now they were not.  Whereas the Steering Group had indicated that they would present the Debtors

B.   <u>Application for Appointment of Special Counsel</u>

Sometime after the recording incident, the Debtors retained the law firm of Elliot Greenleaf & Siedzikowski, PC. to determine whether the recording incident gave rise to any cause of action.  Elliot Greenleaf was familiar with the Debtors having previously provided general legal services to the Debtors in unrelated actions.  (Doc. no. 18, exh. 4, P-142).  Elliot Greenleaf proceeded to gather facts pertaining to the recording incident, conducted legal research, drafted a proposed complaint, and generally provided advice to the Debtors concerning the Debtors' legal options.

On April 8, 2009, the Debtors filed in the Bankruptcy Court an Application for Entry of an Order Authorizing Retention and Employment of Elliot Greenleaf as special counsel under section 327(e) of the Bankruptcy Code.  In the Application, the Debtors submitted that the special counsel would render the following specific services for the Debtors:

> 1.   Investigation of certain incident(s) involving the unauthorized recording of confidential pre-petition meeting(s) between the Debtors and their senior secured lenders;
>
> 2.   Advice regarding potential causes of action to be pursued in connection with such unauthorized

a proposal in early January to inject new money into the business, the Debtors subsequently were informed in late January that the Steering Group would not provide such funding."  (Doc. no. 18, p. 17).

recording; and

3.    Pursuit of any non-bankruptcy litigation or other legal action in connection with such unauthorized recording(s) and in connection with the possible improper use and disclosure of such unauthorized recording(s) to others.

See Debtors' Application, (doc. no. 18, exh. 4, P-143, ¶9).

The Committee and the Secured Lenders objected to the Application.  The United States Trustee took no position concerning the need for the investigation, but asked for a budget and additional information in the event that the Application was granted.

On April 20, 2009, the Bankruptcy Court held a hearing to consider the Debtors' Application.  Tierney testified in support of the Debtors' Application, recounting the recording incident and the animosity which ensued among the parties after the recording incident was discovered.  In addition, Tierney testified to the advantages of Elliot Greenleaf's involvement in an investigation of the recording incident, specifically emphasizing the firm's legal expertise and reasonable billing rates.

At the conclusion of the hearing, the Bankruptcy Court issued an oral ruling[4] which denied the Debtors' Application for

---

[4]    On May 15, 2009, following the Bankruptcy Court's oral ruling, the court issued a Memorandum Opinion and Order, memorializing the April 20, 2009 ruling and further expounding upon the court's rationale.  Local Rule 8001-1(b) allows for such

Appointment of Special Counsel, without prejudice and appointed the Creditors' Committee to conduct an investigation into the recording incident.[5]   The Debtors now appeal the part of the order which denied the Application for Appointment of Special Counsel.[6]


II.   APPELLATE JURISDICTION

        The Court must first consider whether it has jurisdiction over this appeal.   In bankruptcy cases, the district

_____

an issuance.   The Rule provides:   Opinion in Support of Order - "the bankruptcy judge whose order is the subject of an appeal may, within 15 days of the filing of the notice of appeal, file a written opinion in support of the order or a written supplemental opinion that amplifies any earlier written opinion or recorded oral bench ruling or opinion."   L.B.R. 8001-1(b) (2005).

        [5]   In appointing the Committee to conduct the investigation, although it was not expressly stated, it is fairly inferred that the Bankruptcy Court denied any request by the Debtors to investigate the recording incident through the use of their general bankruptcy counsel.   The Bankruptcy Court appeared concerned that such an investigation would distract the general bankruptcy counsel from the development of the reorganization plan.   (Doc. no. 18, exh. 1, P-019) ("[t]he Court believes the Committee's handling the investigation at this time is more appropriate [to allow] the Secured Lenders and the Debtors [to] focus on the more important business of the DIP financing and use of collateral. . . [t]he Debtors and Secured Lenders must focus on moving this case forward and providing liquidity to these cash-strapped Debtors").

        [6]   Pursuant to the Debtors' representations to the Court at oral argument on May 13, 2009, the Debtors do not appeal the Bankruptcy Court's decision to appoint the Committee to conduct an investigation into this incident.   May 13, 2009, Hr'g Tr. 8:17-24.

court sits as an appellate court and has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).  In re Sheckard, 394 B.R. 56, 61 (E.D. Pa. 2008); In re Top Grade Sausage, Inc., 227 F.3d 123, 125 (3d Cir. 2000).

Title 11 Section 158(a) provides in pertinent part, "the district courts shall have jurisdiction to hear appeals: (1) from judgments, orders, and decrees."  The Committee and Secured Lenders have moved to dismiss the appeal on the basis that the Court lacks subject matter jurisdiction.  Each motion will be addressed in turn.

A.   Motion to Dismiss - Committee

The Committee argues the Court is without subject matter jurisdiction because the Bankruptcy Court's order did not constitute a final, appealable order (doc. no. 14).  First, the the Committee contends that because the Bankruptcy Court's order pertains to a non-bankruptcy related litigation, rather than to the underlying bankruptcy proceeding, the traditional concept of finality applies, as opposed to the relaxed concept of finality which may apply when bankruptcy issues are at stake.  Under this traditional formulation of finality, the Committee argues that the order is not final because it does not resolve and dispose of the entire dispute before it.  Second, the Committee argues that even if the relaxed concept of finality applies, the order is not final under the relevant four factor test set forth by the Third

-8-

Circuit in <u>Commerce Bank v. Mountain View Village, Inc.</u>, 5 F.3d 34, 37 (3d Cir. 1993).

      1.   <u>Determination of Applicable Standard of Finality</u>

      Traditionally, an order is considered final and appealable only if it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945). However, in the bankruptcy context, the Third Circuit has relaxed this strict rule and "considered finality in a more pragmatic and less technical way than in other situations." <u>In re F/S Airlease II, Inc. v. Simon</u>, 844 F.2d 99, 103 (3d Cir. 1988).

      This pragmatic approach is necessitated because, "bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid a waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate reviews of orders that in other contexts might be considered interlocutory." <u>Id.</u> at 104 (quoting <u>In re Amatex Corp.</u>, 755 F.2d 1034, 1039 (3d Cir. 1985)). However, the Third Circuit continues to adhere to traditional standard of finality when no countervailing bankruptcy considerations are present. <u>Id.</u>

      In determining whether the relaxed approach should be

applied to a discrete aspect of an adversary proceeding, "the general antipathy toward piecemeal appeals still prevails." In re Natale, 295 F.3d 375, 378-79 (3d. Cir. 2002).  Consequently, an order of the bankruptcy court in an individual adversary proceeding[7] is not final unless it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  Truong v. Kartzman (In re Truong), 513 F.3d 91 (3d Cir. 2008).

---

[7]     Federal Rule of Bankruptcy Procedure 7001 sets forth several matters that may only be resolved through an adversary proceeding.  "An adversary proceeding is essentially a self-contained trial – still within the bankruptcy case - in which a panoply of additional procedures apply."  SLW Capital, LLC v. Mansary-Ruffin, 530 F. 3d 230, 234 (3d Cir. 2008).

        Pursuant to Rule 7001, the following matters are adversary proceedings: (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002; (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d); (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property; (4) a proceeding to object to or revoke a discharge; (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan; (6) a proceeding to determine the dischargeability of a debt; (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief; (8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief; (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or (10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

The first step in analyzing the finality of the
bankruptcy order denying the appointment of special counsel is to
determine whether the traditional or relaxed standard of finality
should be employed.  The Committee argues that because the denial
of special counsel primarily affects issues concerning a
potential cause of action to be pursued through an adversary
proceeding, the traditional standard of finality applies.  On the
other hand, the Debtors argue that because the employment of
special counsel could affect the underlying bankruptcy
proceeding, the relaxed concept of finality applies.

In support of the traditional construction of finality,
the Committee cites to In re Allegheny Int'l, Inc., 107 B.R. 518
(W.D. Pa. 1989).  In Allegheny, the creditors committee asked for
the appointment of special counsel to represent it in an
adversary proceeding.  Id. at 520.  Pointing to a potential
conflict of interest, the equity committee objected to the
proposed appointment.  Id. at 521.  Finding this potential
conflict to be insignificant, the bankruptcy court approved the
appointment of special counsel and the equity committee appealed.
Id.

The district court rejected the appeal, holding that
because the bankruptcy court order appointed special counsel for
the purpose of pursuing an adversary proceeding, the order did

-11-

not constitute a final order.  Id.  The court explained that the order did not involve issues "peculiar" to bankruptcy, but instead raised an issue - disqualification of counsel due to a conflict of interest - which arises in all areas of litigation. Id.  As a result, the court held that it did not have jurisdiction under 28 U.S.C. § 158(a)(1) to hear the appeal.  Id.

Allegheny is distinguishable from the instant case. Although the orders at issue in both Allegheny and the instant case denied an application for special counsel, the posture in which the applications were presented and the purpose for which the representations were sought are quite different.

In Allegheny, the appointment was sought solely for the narrow purpose of representing the committee in a garden variety adversary proceeding, and for nothing more.  Here, in contrast, the appointment of special counsel is sought for the broader purpose of "investigat[ing] [certain pre-petition conduct of the Secured Lenders]," providing "advice" [regarding potential causes of action], and "pursuit of non-bankruptcy causes of action." While certainly Allegheny addressed the finality of an order denying the appointment of counsel for purposes of representing a party in an adversary proceeding, it did not consider (because it was not before it) whether an order which seeks counsel for the purpose of "investigat[ing]" pre-petition conduct by a creditor

-12-

or providing "advice" to the Debtors concerning potential causes
of action is a final order.

In this case, it appears that the Debtors' focus is not
on retaining special counsel to represent it in an adversary
proceeding, as it was in Allegheny, but rather on securing the
advice of its pre-petition counsel concerning potential causes of
action and the impact of the recording incident on the
formulation of a plan, relative priorities of creditors, set
offs, subornation of claims, and potential defenses.  Under these
circumstances, the order denying the appointment of special
counsel affects the underlying bankruptcy proceeding.  Because
these issues implicate "considerations unique to bankruptcy,"
Truong, 513 F.3d at 94, and not issues which are "solely related
to the conduct or progress of litigation," id., the relaxed,
pragmatic approach to finality will be employed.[8]

---

[8]      Notably, the bankruptcy judge highlights that "the
determination of a request to appoint special counsel generally
is not considered a final, appealable order."  (Doc. No. 18-2, p.
7, footnote 3).  In support of this position, the bankruptcy
judge cites three cases, outside of the Third Circuit, where
various courts held that the appointment of special counsel under
Section 327(e) did not constitute a final, appealable order.  In
re Westwood Shake & Shingle, 971 F.2d 387 (9th Cir. 1992); In re
Devlieg, 56 F.3d 32 (7th Cir. 1995); and In re Nucor, Inc., 118
B.R. 786 (D. Col. 1990).

In Westwood Shake & Shingle and Nucor, the Ninth
Circuit and the District of Colorado do not employ the relaxed
construction of finality in the bankruptcy context, but rather
adhere to the traditional concept of finality in the

-13-

2.   <u>Application - Finality Under Bankruptcy Standard</u>

The Debtors assert that under the relaxed approach to finality, the Bankruptcy Court's order constituted a final order for the purpose of conferring jurisdiction on the Court under 28 U.S.C. § 158(a).  To the contrary, the Committee argues that even under the relaxed approach to finality, an analysis of the relevant four factors articulated by the Third Circuit in <u>Commerce Bank</u> reveals that the order is not final.

In considering whether, under the relaxed approach, an order is final, the Third Circuit gives weight to the following factors: (1) the impact on the assets of the estate; (2) the preclusive effect of a decision on the merits; (3) the need for additional fact-finding on remand; and (4) whether the interests of judicial economy will be furthered.  <u>Commerce Bank</u>, 5 F.3d at 37; <u>In re Marvel Entm't</u>, 209 B.R. 832, 836 (D. Del. 1997)

_____

consideration of bankruptcy orders.  In <u>Devlieg</u>, the Seventh Circuit noted that although the relaxed construction of finality applies to bankruptcy orders in some contexts, the traditional concept of finality applies to orders appointing special counsel under § 327(e).  Because the Third Circuit, unlike these jurisdictions, employs a relaxed approach to finality in the bankruptcy context, and more specifically, to § 327(e) appointments affecting the underlying bankruptcy proceeding, these cases are distinguishable.  <u>See</u> <u>generally</u>, <u>In re Arochem Corp.,</u> 176 F.3d 610, 619-20 (2d Cir. 1999) (discussing various circuit court approaches to determine finality of bankruptcy orders).

(applying Third Circuit factors to conclude bankruptcy order was final).  These factors serve as a guide for the finality inquiry, but do not constitute an exhaustive list.  Id.  The first and fourth factors are particularly relevant here.

First and foremost, as the Debtors highlight, denial of appointment of special counsel to represent the Debtors and/or participate in an investigation of the recording incident and to advise the Debtors as to their legal options has a potential impact upon the assets of the estate.  As noted, a potential outcome of the investigation is the discovery of information which could affect the formulation of a plan, relative priorities of creditors, set offs, subornation of claims, and potential defenses.  Presumably, the bankruptcy judge recognized this potential impact, as evidenced by the very decision to order an investigation into the recording incident, albeit an investigation conducted by the Committee.  Notably, the Third Circuit advises, "where the issue is likely to affect the distribution of the debtor's assets, or the relationship among the creditors, the most pragmatic response will usually be to hear the appeal immediately."  In re Brown, 803 F.2d 120, 122 (3d Cir. 1986).[9]

_____

[9]   To the extent that the Committee suggests that the outcome of the investigation would not yield a meritorious claim and/or would not impact the assets of the estate, or that the

-15-

Moreover, judicial economy is furthered by the review of this order now because of the impending deadline for the filing of the Debtors' reorganization plan.  Because this deadline is approaching, the necessity for the advice of special counsel is current, impacts bankruptcy issues, and cannot be effectively revisited by the Court at a later date.

Accordingly, under the relaxed approach to finality adhered to by the Third Circuit, the Court treats the bankruptcy order as final.

B.   Motion to Dismiss - Steering Group

The Steering Group argues that even if the bankruptcy order is final for the purpose of conferring jurisdiction under 28 U.S.C. § 158(a), the appeal is barred by the doctrine of

---

Debtors have already agreed not to pursue this claim, these arguments conflate the jurisdiction inquiry with the merits of the appeal.  The Committee and the Steering Group both suggest that a claim arising out of the recording incident would yield minimal recovery for the Debtors.  See e.g., May 13, 2009, Hr'g Tr. 32:6-10 (Committee - "This is a wiretap statute.  I'm not aware of any jurisprudence that says a corporation has the right to bring claim under the statute");  Brief of the Steering Group (doc. no. 29, p. 18, fn. 8) (noting that under 18 Pa. C.S.A. § 5725(a), Pennsylvania Wiretapping and Electronic Surveillance Control Act, a person whose oral communication is intercepted to recover actual damages or liquidated damages amounting to $100 a day for each day of violation or $1,000); May 13, 2009, Hr'g Tr. 8:17-19.

A decision on whether the Court has jurisdiction over the appeal does not depend upon the merits of the underlying claim.

equitable mootness.  In addition, the Steering Group argues that judicial estoppel bars this appeal, given that pursuit of the appeal cannot be reconciled with the Debtors' representation that the investigation conducted by the Committee is in the best interest of the estate.  Both arguments are unavailing.

### 1.  Equitable Mootness

The Steering Group argues that because the investigation of the Committee is in progress, and because the Debtors have fully participated in the investigation, it would be inequitable for the Court to halt the current investigation, or order a duplicative investigation to be conducted by the Debtors. The Third Circuit has held that "an appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable."  In re Reading Broad., Inc., No. 08-1775, 2008 U.S. Dist. LEXIS 61451, at *10-11 (E.D. Pa. Aug. 8, 2008) (citing In re Continental Airlines, 91 F.3d 553, 558-59 (3d Cir. 1996)). However, the doctrine "is limited in scope and should be cautiously applied."  Continental Airlines, 91 F.3d at 559.

Importantly, Third Circuit jurisprudence has applied the equitable mootness doctrine only in those cases where a party seeks an appeal after the confirmation of a reorganization plan. See e.g., Continental Airlines, 91 F.3d at 560-61; Reading

-17-

Broad., 2008 U.S. Dist. LEXIS 61451, at 12-13; In re Machne
Menachem, No. 07-0057, 2008 U.S. Dist. LEXIS 30758, at *5 (M.D.
Pa. Mar. 31, 2008).  In fact, in analyzing the applicability of
equitable mootness, the Third Circuit has noted that the
"foremost consideration is whether the reorganization plan has
been substantially consummated."  Continental Airlines, 91 F.3d
at 560.[10]

Given that there is no Third Circuit decision which
extends the doctrine of equitable mootness outside the context of
consummation of a confirmed plan, the Court declines to do so on
these facts.[11]

_____

[10]    In addition, the Third Circuit cites the following
factors as considerations in determining whether it would be
equitable or prudential to reach the merits of a bankruptcy
appeal: 1) whether the reorganization plan has been substantially
consummated; (2) whether a stay has been obtained; (3) whether
the relief requested would affect the rights of the parties not
before the court; (4) whether the relief requested would affect
the success of the plan; and (5) the public policy of affording
finality to bankruptcy judgments.   Continental Airlines, 91 F.3d
at 560.

[11]    The Steering Group argues that the Court should extend
the applicability of this doctrine to the a context unrelated to
the consummation of a confirmed plan.  The Steering Group points
to a decision by the district court in the Southern District of
West Virginia, where the court rejected the argument that
equitable mootness applies only where the consummation of a
confirmed plan was at issue.  In re Shawnee Hills, Inc., No. 02-
0872, 2002 U.S. Dist. LEXIS 23143, at *8-9 (S.D. W. Va. Nov. 19,
2002).  The Court will decline to follow this approach.

2.   <u>Judicial Estoppel</u>

The Steering Committee argues that because the Debtors consented to the 60-day investigation conducted by the Committee, and have been afforded the opportunity to participate in the investigation, the Debtors are judicially estopped from arguing that the Bankruptcy Court erred in denying the Debtors' request for the appointment of special counsel.  The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position." <u>Delgrosso v. Spang & Co.</u>, 903 F.2d 234, 241 (3d Cir. 1990).  Judicial estoppel is an equitable doctrine which is "designed to prevent parties from 'playing fast and loose with courts.'" <u>In re Mintze</u>, 434 F.3d 222, 232 (3d Cir. 2006).

As noted above, in the Debtors' initial § 327(e) Application, the Debtors submitted that special counsel would serve the following functions: (1) investigate the recording incident; (2) advise the Debtors as to legal implications of the recording incident; and (3) litigate non-bankruptcy disputes arising out of the recording incident.  Importantly, the Debtors do not contend that retention of counsel to serve these functions would interfere with the Committee's investigation, nor do the Debtors object to the Committee conducting its own

investigation.[12]

It is true that the Debtors' advocacy on this point has undergone refinement over time.  First, in the Debtors' motion for expedited appeal (doc. no. 5), the Debtors challenged the Committee's ability to conduct a true investigation, arguing that the Committee's counsel had a conflict of interest.  However, at oral argument on this motion, the Debtors clarified their satisfaction with the Committee's investigation, noting, "the Committee's investigating, which they have an absolute right to do," but argued that the Debtors "need[] counsel, other than us [bankruptcy counsel], to represent them in that connection [the Committee's investigation]."  Later, the Debtors explained that there is nothing inappropriate in the Committee conducting an investigation of the recording incident, the Debtors need counsel to represent them in the investigation and to advise them

---

[12]    Notably, although the Bankruptcy Court appointed the Committee to conduct the investigation, the Committee has a statutory right to investigate the recording incident, pursuant to 11 U.S.C. § 1103(c)(2) ("A committee appointed under section 1102 of this title may - . . . investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan").

To the extent that the Debtors claim that Committee counsel is operating under a conflict or is otherwise not disinterested, this matter should be brought to the Bankruptcy Court in the first instance.

concerning their legal options.  May 13, 2009, Hr'g Tr. 8:17-19.
Most recently, at oral argument on the merits of the appeal,
Debtors' counsel again argued that the Committee investigation
may be flawed by a conflict of interest.  June 5, 2009, Hr'g Tr.
6:3-25; 7:1-5.

While the Debtors' evolving position on this issue has
been a work in progress, the various positions, while admittedly
different in emphasis, are not in conflict.  Fundamentally, the
Debtors have consistently sought the involvement of special
counsel in helping to fix their legal position in reference to
the recording incident.  This position has not changed.  While at
first the Debtors sought a broader role counsel for three
purposes (investigating the recording incident, advising as to
legal options, and litigating any adversary proceeding arising
thereof), the Debtors have now narrowed the focus of the
requested representation and apparently do not seek appointment
of special counsel to litigate the adversary proceeding at this
time.[13]  Under these facts, application of judicial estoppel is
not warranted.

_____

[13]     It is premature to determine whether special counsel
should represent the Debtors in litigation over the recording
incident since the investigation has not yet concluded and it is
unknown whether litigation would eventually ensue.  When such a
determination is made, the question of whether special counsel
should represent the Debtors in an adversary proceeding should be
considered in the first instance by the Bankruptcy Court.

For all of these reasons, the motions to dismiss (doc. nos. 14 and 15) will be denied and the Court will proceed to the merits of the appeal.

III. MERITS OF APPEAL

Turning to the merits of the appeal, the Court considers whether the Bankruptcy Court erred in denying the Debtors' Application for the Appointment of Special Counsel under § 327(e).  The bankruptcy court's denial of the application is reviewed for abuse of discretion.  In re Pillowtex, Inc., 304 F.3d 246, 250 (3d Cir. 2002).  "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  In re Marvel Entm't, 140 F.3d 463, 470 (3d Cir. 1998).

A.   Appointment of Special Counsel under § 327(e)

Appointment of special counsel is controlled by Section 327(e) of the Bankruptcy Code.  Section 327(e) provides: "[t]he Trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to

-22-

the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).

Under this section, special counsel may be appointed if: (1) the representation is in the best interest of the estate; (2) the attorney represented the debtor in the past; (3) the attorney is for a specific purpose approved by the court; and (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate.  Id.[14]

Here, the parties are in agreement that elements two through four are satisfied.  Accordingly, the first element, whether the representation is in the best interest of the estate, is the only question before the Court.

### 1.  "Best Interest" Standard

The Third Circuit instructs, "the attorney's employment must be in the best interest of the estate, which means property

_____

[14]  To the extent that the Debtors rely upon the proposition that "a debtor's right to chose qualified counsel should only be disturbed in the rarest of cases," this argument is misplaced.  The cases cited by Debtors asserting this notion analyzed the appointment of general bankruptcy counsel pursuant to § 327(a), rather than the appointment of special counsel, pursuant to 327(e), as in this case.  See e.g., Vergos v. Timber Creek, Inc., 200 B.R. 624, 628 (W.D. Tenn. 1996); In re Creative Rest. Mgmt., 139 B.R. 902, 910 (W.D. Mo. 1992).  Because the appointments of general counsel and special counsel are governed by separate Bankruptcy Code provisions, cases interpreting the appointment of general counsel under § 327(a) are inapplicable to an analysis of the appointment of special counsel under § 327(e).

of estate is threatened and the need for services is real. Employment cannot be based on some 'hypothetical or speculative benefit.'"   In re Engel, 124 F.3d 567, 575 (3d Cir. 1997) (citing In re Duque, 48 B.R. 965 (D.C. Fla. 1984)).   In addition, the Third Circuit notes that special counsel must provide a benefit to the estate, not merely a benefit to the debtor.   Id.

In Engel, the Third Circuit considered whether special counsel, appointed for the debtor under § 327(e), had a right to be paid from estate funds under § 330, without further scrutiny by the bankruptcy court.  124 F.3d at 569.  Section 330 provides that "the court may award . . . to a professional person . . . reasonable compensation for actual, necessary services rendered . . . which are reasonably likely to benefit the debtor's estate." Because the special counsel seeking payment under § 330 had already been appointed under § 327(e), the court had previously concluded, for the purposes of the § 327(e) analysis, that counsel's services were in the best interest of the estate.   Id. In light of the § 327(e) "best interest" determination, the debtor argued that special counsel was necessarily entitled to payment under § 330.   Id. at 571.

The Third Circuit rejected this argument and clarified that, based on the structure of the Bankruptcy Code, even though the bankruptcy court had approved employment under § 327(e), it

-24-

must once again review the application for compensation under §
330 before payment was approved.  Id. at 572.  The court noted,
"section 327 approvals are merely preliminary 'go aheads' rather
than conclusive determination."  Id.  (citing In re Johns-
Manville Corp., 32 B.R. 728 (S.D.N.Y. 1983)).

     The distinction drawn by the Third Circuit between
"preliminary" and "conclusive" determinations, although not
creating a substantively different "best interest" test under §
327(e) versus § 330, does take into account the different point
in time at which the standard is applied.  Because the § 327(e)
analysis is conducted at the outset of the representation, when
the facts of representation and circumstances of the case have
not been established, the analysis of what benefits, if any, to
the estate are involved is necessarily prospective and
preliminary.  In contrast, at the time of the § 330 analysis,
counsel's representation has concluded, the facts are
established, and the result obtained.  At this later stage, the
court is able to analyze, with the benefit of hindsight, past
conduct and actual benefits that the representation brought to
the estate.

     Engel and the cases upon which it relies are
illustrative of this distinction.  See In re Duque, 48 B.R. 965
(S.D. Fla. 1984); In re French, 139 B.R. 485 (Bankr. D.S.D.

-25-

1992); <u>In re United Church of the Ministers of God</u>, 84 B.R. 50 (Bankr. E.D. Pa. 1988).  In each of these cases, the lawyer was appointed as special counsel to the debtor under § 327(e), and at the time of such appointment, representation by special counsel was deemed in the "best interest" of the estate.  However, upon the completion of the representation, the court concluded in the § 330 analysis, upon a complete record, that such representation was not in fact in the "best interest" of the estate and denied the compensation.

Accordingly, under § 327(e), the focus is whether the advice to be provided by special counsel, as explained in the application, would confer a timely and concrete benefit upon the estate.  If the answer is yes, the appointment under § 327(e) should be made.[15]

2.  <u>"Best Interest" Application</u>

The Debtors' Application sought special counsel to serve the following functions: (1) "investigate [the recording incident];" (2) "advise [the Debtors as to legal implications of the recording incident];" and (3) litigate ["non-bankruptcy disputes arising out of the recording incident]."  The Bankruptcy Court denied the appointment of special counsel to serve each of

---

[15]   Of course, if the representation does not in fact yield any benefit to the estate, special counsel bears the risk that compensation will not be authorized under § 330.

-26-

these functions, finding that such appointments were not in the best interest of the estate.  (Doc. No. 18-2, p. 16).  These determinations were made without prejudice - allowing the Debtors to re-present their requests for special counsel at a later date.

The determinations to deny appointment of special counsel to investigate the recording incident and/or litigate non-bankruptcy claims (the first and third proffered functions) do not constitute an abuse of discretion.  The Bankruptcy Court deferred appointment of special counsel to conduct any litigation until the facts and circumstances surrounding the recording incident become clearer.  The court also deferred a determination of whether to appoint special counsel to investigate the Secured Lenders' conduct on behalf of the Debtors until the Committee has concluded its investigation.

Both determinations promote efficiency in the administration of the estate, avoid duplication of efforts and unnecessary expenditures of resources.  In addition, both determinations do not prejudice the Debtors in that they retain the right to seek special counsel at a later date.[16]  On these

---

[16]   To the extent that the Debtors argue that the Bankruptcy Court erred in making these determinations by ignoring evidence, this argument is without merit.  In the Debtors' brief in support of the appeal, the Debtors assert that the bankruptcy judge prematurely silenced Tierney's testimony, upon a relevancy objection of the Steering Committee, because the testimony went beyond the scope of the Application.  (Doc. no. 18, p. 26-29).

facts, as in Engel and the cases upon which it relied, the
Debtors failed to show that the requested representation would
confer a concrete benefit upon the estate at this time and thus
that "the need for [retention of special counsel for these
purposes] is real."

However, the Bankruptcy Court's decision to deny the
request for special counsel to serve the second proffered
function, "advise" the Debtors during the pre-plan filing aspect
of the case, prejudices the Debtors' rights and did constitute an
abuse of discretion.  Recognizing the importance of both
investigating the recording incident and focusing the Debtors and
Secured Lenders upon the creation of a reorganization plan, the

---

The Debtors contend that had Tierney been permitted to continue,
he would have more fully developed the breakdown in communication
among the parties which transcended as a result of the recording
incident.  This argument was not raised during the hearing to
consider the merits of the appeal on June 5, 2009.

Contrary to the Debtors assertion, an analysis of
Tierney's testimony before the Bankruptcy Court reveals that the
court allowed Tierney to adequately develop the deterioration of
the relationship with the lenders which ensued after the
recording incident.  Tierney indicated that the lenders became
"angry and aggressive" and "increasingly hostile" towards the
Debtors.  April 20, 2009, Hr'g Tr. 28:15-18.  The Debtors fail to
articulate any additional testimony which Tierney would have
provided had the Bankruptcy Court not sustained the relevancy
objection.  Notably, the Debtors offered evidence of the
breakdown in negotiations as support for the requested
investigation into the incident.  The Bankruptcy Court did in
fact order an investigation into the incident, presumably based,
at least in part, upon this evidence, thus undermining the
Debtors' argument that such evidence was ignored.

Bankruptcy Court sought to implement a practical solution whereby the Committee would investigate the recording incident (rather than the Debtors) and once the investigation results were generated, the "Debtors and their counsel [would] be free to confer confidentially and draw their own legal conclusions." (Doc. no. 18, exh. 1, P-023).

This approach failed to consider the benefits which, under the circumstances of this case, the "advice" of special counsel throughout the Committee's investigation and in the preparation of the plan would confer upon the Debtors.[17]  First, there is a "real need" for retention of special counsel which the Elliot Greenleaf firm is equipped to fulfill. This is a large and complex case involving $295 million in claim, hundreds of suppliers and approximately 10,000 employees whose economic future is at stake.  The Debtors' predicament is taking place amidst an industry in distress.  Early legal assistance is important to the Debtors in developing their legal position in the case.

Second, the Elliot Greenleaf firm is uniquely qualified to advise the Debtors in connection with the investigation because it represented the Debtors pre-petition, and is

_____

[17]     For the purpose of this analysis and under the circumstances of this case, benefit to the Debtors, as a fiduciary for the estate, is a benefit to the estate.

"intimately familiar with the complex legal issues that arise and are likely to arise in connection with the Debtors' corporate structure, debt structure, strategic and transactional goals, and ongoing business operations, particularly those involving the matter for which the Debtors seek to retain Elliot Greenleaf." (Doc. no. 18, exh. 4, P-142).

Third, retention of Elliot Greenleaf in conjunction with the recording incident would allow the Debtors to frame a plan of reorganization which would address relative priorities of creditors, set offs, subornation of claims, and potential defenses.  Viewed through the prospective prism of the § 327(e) analysis, as intimated in Engel, the retention of qualified counsel, who is intimately familiar with the Debtors, to advise the Debtors concerning matters of grave consequence to the Debtors at this critical point in the proceeding, would provide a concrete benefit to the estate.

In determining that the § 327(e) appointment of special counsel for this advisory role was not in the "best interest" of the estate, the Bankruptcy Court failed to consider the appointment from the preliminary and prospective view, as suggested by Engel.  As a result, the court failed to appreciate that the advice to be provided by special counsel, as explained in the application, would confer a timely and concrete benefit

upon the estate.  Failure to apply the "best interest" test from a prospective vantage point deprives the Debtors of adequate legal counsel at a critical time in the bankruptcy proceeding and thus removes from the Debtors' quiver an important arrow with which to defend the property of the estate.

Finally, although ostensively, the denial of special counsel for this advisory role is without prejudice, because the need for advice concerning the recording incident's impact on the plan is needed now, it cannot be revisited later.  Under these circumstances, the denial of the appointment of special counsel for the purpose of advising the Debtors regarding the legal implications of the recording incident and its impact on the reorganization plan is, in reality, final and conclusive.

For the foregoing reasons, this determination constitutes an abuse of discretion.


IV.  CONCLUSION

For the reasons set forth above, the decision of the Bankruptcy Court denying the appointment of special counsel to investigate the recording incident and litigate non-bankruptcy claims is AFFIRMED.  The decision of the Bankruptcy Court denying the appointment of special counsel to advise the Debtors concerning the legal implications of the recording incident and

-31-

its impact upon bankruptcy and non-bankruptcy issues is REVERSED.

The Bankruptcy Court shall appoint the law firm of Elliot Greenleaf & Siedzikowski, PC., pursuant to § 327(e), as special counsel to the Debtors for the purpose of representing the Debtors in connection with the Committee's investigation of the recording incident, and advising as to its impact on the plan on reorganization, defenses, subordination of claims, set offs, relative to bankruptcy and non-bankruptcy claims.  This appointment is subject to the terms and conditions that the Bankruptcy Court deems appropriate.

An appropriate order follows.